IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

SUNBEAM PRODUCTS, INC.,

                Plaintiff,                    OPINION and ORDER

v.

                                          08-cv-376-slc

HOMEDICS, INC.,

                Defendant.

---

Plaintiff Sunbeam Products, Inc., owns United States Patent No. 5,133,420 (the '420 patent), which discloses a method of constructing scale platforms. Plaintiff has filed this patent infringement lawsuit against defendant Homedics, Inc., alleging that defendant's scale models infringe the '420 patent.

Now before the court is defendant's motion for construction of disputed claims terms in the '420 patent. In addition, plaintiff filed a "Motion for Permission to File a Reply Brief Regarding Claim Construction," dkt. 49, in which it contends that it misunderstood this court's preliminary pre-trial conference order regarding claims construction and that fairness requires plaintiff an opportunity to respond to new arguments raised in defendant's reply brief to claims construction. I agree with plaintiff that fairness dictates that each party deserve an equal opportunity to present its arguments regarding claims construction.[1] However, in this instance, I need not consider plaintiff's additional brief to ensure that plaintiff is not prejudiced because nothing in defendant's reply impacted my construction of the claims. Therefore, I will deny plaintiff's motion for leave to file a reply brief regarding claim construction as unnecessary.

---

[1] For what it's worth, this misunderstanding prompted a court-wide revision of the preliminary pretrial conference order so as to clarify the claims construction briefing sequence.

With respect to motion for construction of claim terms in the '420 patent, defendant contends that certain terms in the patent are means-plus-function terms that require importing certain limitations into the claim terms and that the term "L-shaped" must be construed to mean a 90° angle. After reviewing the parties' briefs, I conclude that:

(1) "Assembly means" is not a mean-plus-function term in either claim 1 or claim 8 and it does not require importing structural limitations from the specification;

(2) "Retaining said stand portions in face-to-face engagement with the underside of said platform and permitting limited displacement of said bearing members in a horizontal direction" (claim 1) and "retaining said bearing means in sliding engagement with the underside of said platform and permitting limited displacement of said bearing members in a horizontal plane" (claim 8) do not contain a non-horizontal movement limitation; and,

3) "L-shaped" (claims 5 and 6) does not require construction.

## OPINION

**A. Asserted Claims**

The '420 patent is directed toward the production of domestic platform scales, more commonly known as bathroom scales. The asserted novelty of the '420 scale is that it provides a simple means for the bearing members to exert a pure downward force on the force collection levers, thereby providing more accurate measures of weight. '420 Pat., col. 1, lns. 54-61. Pure downward force reduces undesired binding or twisting on the collection levers that would cause inaccurate measurements. '420 Pat., col. 1, at lns. 46-51. The disputed terms in the '420 patent

that I have agreed to construe appear in independent claims 1 and 8 and dependent claims 5 and 6:

> 1. A platform scale comprising a . . . platform extending horizontally to support a load to be weighted, bearing members mounted on the underside of said platform . . . being loosely coupled to said platform permitting horizontal displacement, said bearing members each having stand portions and depending column portions each, said depending column portions having a lower end, **assembly means on said stand portions and on said platform retaining said stand portions in face-to-face engagement with the underside of said platform and permitting limited displacement of said bearing members in a horizontal direction,** each said lever being formed with an upwardly facing notch which receives a horizontally extending edge on the lower end of said depending column portion, said assembly means permitting said body members to shift horizontally to align said edges in said notches.
>
> * * *
>
> 5. The platform scale of claim 2 wherein one of said tabs of each pair is **L-shaped** having an outer end formed to extend parallel to said platform and spaced therefrom with a portion of said stand portion being slidably received between said outer end and said platform, and the other tab of each said pair extending through a slot in said stand portion and being formed to retain said stand portion against said platform.
>
> 6. The platform scale of claim 5 wherein said other tab of each pair is **L-shaped** and substantially identical in shape to each said one of said tabs having an outer end coplanar with said outer end of each of said one of said tabs.
>
> * * *
>
> 8. A platform scale comprising a base supporting a plurality of force collecting levers, . . . a platform coextensive with said base and extending horizontally to support a load to be weighed, . . . said platform having bearing members . . . engaging said levers

intermediate their ends to apply a rotating force to said levers in response to a load on said platform, **assembly means on said bearing members and on said platform retaining said bearing means in sliding engagement with the underside of said platform and permitting limited displacement of said bearing members in a horizontal plane, said assembly means having spaced projections and slots formed in said bearing members and said platform, said slots being substantially larger than said projections** to allow relative horizontal displacement of said bearing members with respect to said platform, each said lever being formed with an upwardly facing bearing notch which receives a horizontally extending edge on a lower end of each of said bearing members, said assembly means permitting said bearing members to shift horizontally with respect to said platform to align said edges and said bearing members with respect to said upwardly facing notches.

### B. Standard for Construing Claim Terms

When construing disputed terms in a claim, a court generally should give the terms "the meaning that the term[s] would have to a person of ordinary skill in the art in question at the time of the invention." *Phillips v. AWH Corporation*, 415 F. 3d 1303, 1313 (Fed. Cir. 2005)(*en banc*). The Federal Circuit has held that the person of ordinary skill in the art would read the terms both in the context of the claim in which it appears and "in the context of the entire patent, including the specification." *Id.* (citing *Multiform Desiccants, Inc. v. Medzam, Ltd.*, 133 F.3d 1473, 1477 (Fed. Cir. 1998)).

The specification takes on a more important role if the inventor invoked the means-plus-function language of 35 U.S.C. § 112, ¶ 6, thereby incorporating the specification's embodiment into the claims by reference. Also, the court may, in appropriate circumstances, use extrinsic evidence such as the opinion of experts or dictionary definitions in assisting it in understanding

4

the commonly understood meaning of a word. *Phillips*, 415 F. 3d at 1322-23 ("judges . . . may rely on dictionary definitions when construing claim terms, so long as the dictionary definition does not contradict any definition found in or ascertained by a reading of the patent documents"); *Pitney Bowes, Inc. v. Hewlett-Packard Co.*, 182 F.3d 1298, 1308-09 (Fed. Cir. 1999)(expert testimony useful in illustrating how term used in field.)  However, extrinsic evidence should be given less weight than the intrinsic evidence and viewed within the context of that intrinsic evidence. *Phillips*, 415 F.3d at 1318-19; *see also Daubert v. Merrell Dow Pharamaceuticals. Inc.*, 509 U.S. 579, 595 (1993) (expert evidence misleading and difficult to evaluate).

### 1. "Assembly Means" and Associated Functions

Defendant contends that the term "assembly means" and its associated functions, i.e., "retaining said stand portions in face-to-face engagement with the underside of said platform and permitting limited displacement of said bearing members in a horizontal direction" (claim 1) and "retaining said bearing means in sliding engagement with the underside of said platform and permitting limited displacement of said bearing members in a horizontal plane" (claim 8),  in claims 1 and 8 should be construed as a means-plus-function limitation.  Plaintiff disagrees as to claim 8 but does not seem to dispute this as to claim 1.

Title 35 U.S.C. § 112, ¶6 provides that:

> An element in a claim for a combination may be expressed as a means or step for performing a specified function without the recital of structure, material, or acts in support thereof, and such claim shall be construed to cover the corresponding structure, material, or acts described in the specification and equivalents thereof.

*See also Applied Medical Resources Corp. v. U.S. Surgical Corp.,* 448 F.3d 1324, 1332 (Fed. Cir. 2006). "A means-plus-function limitation recites a function to be performed rather than definite structure or materials for performing that function." *Lockheed Martin Corp. v. Space Systems/Loral, Inc.,* 324 F.3d 1308, 1318 (Fed. Cir. 2003). "Means-plus-function claiming applies only to purely functional limitations that do not provide the structure that performs the recited function." *Phillips,* 415 F. 3d at 1311. In other words, a means-plus-function term is a functional placeholder and the structure for that function is filled in by the specification. *Id.*

**1(a) "assembly means" in Claims 1 and 8**

> **Plaintiff's proposed construction:**
>
>> Slots on the stand portions and tabs on the underside of the platform and equivalents (i.e. the tabs can come from the bearing and it can be inserted into the platform via slots and bent over.)
>
> **Defendant's proposed construction:**
>
>> Platform tabs inserted through bearing member slots and bent over the base of the bearing member.
>
> **Court's Construction**:
>
>> Platform tabs or projections inserted into slots in the bearing member and bent over to connect the platform and the bearing member.

As defendant notes, because the term "assembly means" in claims 1 and 8 recites the word "means," there is a presumption that § 112, ¶ 6 applies. *Cross Medical Products, Inc. v. Medtronic Sofamor Danek, Inc.,* 424 F.3d 1293, 1303 (Fed. Cir. 2005). But although use of the term "means" indicates the existence of a mean-plus-function limitation, it is not dispositive.

6

"When a claim uses the term 'means,' the focus is on whether the claim term recites no function corresponding to the means or recites sufficient structure or material for performing that function." *Apex Inc. v. Raritan Computer, Inc.*, 325 F.3d 1364, 1372 (Fed. Cir. 2003). As the court noted in *Net MoneyIN, Inc. v. VeriSign, Inc.*, 545 F.3d 1359 (Fed. Cir. 2008),

> A claim element that contains the word "means" and recites a function is presumed to be drafted in means-plus-function format under 35 U.S.C. § 112 ¶6. The presumption is rebutted, however, if the claim itself recites sufficient structure to perform the claimed function. Where a claim recites a function, but then goes on to elaborate sufficient structure, material or acts within the claim itself to perform entirely the recited function, the claim is not means-plus-function format.

*Id.* at 1366 (citations omitted); *see also Phillips v. AWH Corp.*, 415 F.3d at 1311 ("Means-plus-function claiming applies only to purely functional limitations that do not provide the structure that performs the recited structure").

Defendant fails to illustrate how an "assembly means" is a claimed element that recites a certain function. "Assembly means" as used in claims 1 and 8 describes how two separate components of the scale are connected to each other and not what an "assembly means" does. To use the phrase from *NetMoneyIN*, both claims "elaborate sufficient . . . acts within the claim itself to perform entirely the recited function." 545 F.3d at 1366. Thus, an "assembly means" is not a separate object or structure that accomplishes a specific function but a means of assembling or connecting two claimed elements of the '420 patent. But even if this court were to use construe the term as means-plus-function claiming, the construction would not change. More on this below.

Even though the term "assembly means" is not a mean-plus-function term, the parties dispute what "assembly means" refers to. I conclude that an "assembly means" is a means of assembling the platform in a manner that allows the invention to accomplish its intended aim. In the "Summary of the Invention" section, the patentee states that the innovation of the patent is that it creates a "pure downward force" between the platform and the force collection levers. '420 Pat., col. 1, lns. 55-57. This is accomplished by transferring force from the platform to the force collection levers through the bearing members. '420 Pat., col. 2, lns. 6-10. The manner in which the bearing members are connected to the platform insures the desired "pure downward force." In contrast, the prior art contained a "bearing member [that] pivots about a point on the platform [which] prevents the application of a pure vertical force." '420 Pat., col. 1, lns. 47-49.

In both claims 1 and 8, the bearing member and the platform are parallel to each other, they are not on a "pivot." In order to maintain this relationship, the two objects need to be attached in a specific manner that is what the assembly means describes. Specifically, the "assembly means" allows the bearing member and the platform to stay in face-to-face (claim 1), sliding engagement (claim 8) with limited horizontal movement.

The parties also dispute whether the claim language of the '420 patent describes how the bearing member and platform are connected. Defendant contends that neither claim 1 nor claim 8 describes the method of interconnection. I disagree with defendant regarding claim 8, which does identify how the two pieces are connected, but I agree with defendant that claim 1 fails to identify how the two interconnect. However, the specification of the '420 patent describes how the bearing member and platform are meant to be connected, which, incidentally, mirrors the connection described in claim 8. As the court stated in *Phillips*, other claims can be "valuable

8

sources of enlightenment as to the meaning of a claim term;" further, the claims must be read in view of the specification, which is the single best guide to the meaning of a disputed term. 415 F.3d at 1314-15.[2]

In claim 8, the bearing member and the platform are connected by "spaced projections and slots formed in said bearing members and said platform, said slots being substantially larger than said projections." '420 Pat., col 6, lns. 33-36. Claim 8 does not explicitly state whether the bearing member or the platform contains the slots or projections; however, the syntax suggests that the bearing member contains slots and the platform has projections. This is confirmed by the specification. '420 Pat., col. 3, lns. 50-53; col. 4, lns. 20-28; Figs. 9-11.

The specification offers a detailed explanation of how the bearing members and platform in claims 1 and 8 are intended to connect. Courts may look to the summary to help construe claims. *See Netcraft Corp. v. eBay, Inc.*, 549 F.3d 1394, 1400 (Fed. Cir. 2008). Here, the summary states as an object of the invention "a platform having four one-piece bearing members which are loosely secured to the platform by deformable tabs integrally punched from the scale platform." Col. 2, lns. 19-22. *See also* Col. 1, lns. 64-68 and Col. 4, lns 25-28. The bearing member is created with three flanges that are meant to run parallel with the underside of the platform. '420 Pat., col. 3, lns. 43-47; Fig. 10. Two of these flanges contains slots that are made for pre-formed tabs that extend from the underside of the platform. '420 Pat., col. 4, lns.

---

[2] This analysis also would appear to control the construction of the term "assembly means" in Claim 1 even if this court were to construe it as means-plus-function term. If the term "assembly means" really is nothing more than a functional placeholder in claim 1, then the structure for this function provided in the specification and the drawings is the same as the structure more specifically set forth in conjunction with the term "assembly means" in Claim 8. In other words, the court's construction of the term "assembly means" in claim 1 would be the same.

25-28. To connect the two pieces, platform tabs slide into the slots. '420 Pat., col. 4, lns. 28-36. Thus, an "assembly means" is mean of connecting the bearing member to the underside of the platform by hooking tabs extending from the platform into slots in the bearing member.

1(b)      **"Retaining said stand portions in face-to-face engagement with the underside of said platform and permitting limited displacement of said bearing members in a horizontal direction" as used in claim 1,**

    **and**

    **"Retaining said bearing means in sliding engagement with the underside of said platform and permitting limited displacement of said bearing members in a horizontal plane" as used in claim 8**

**Plaintiff's proposed construction:**

>   Linking the stand portions to the underside of the platform and allowing limited horizontal movement of the bearing member." (claim 1)

>   and

>   Slots on the stand portions and tabs on the underside of the platform and equivalents (i.e. the tabs can come from the bearing and it can be inserted into the platform via slots and bent over, the slots being substantially larger than the tabs)" (claim 8)

**Defendant's proposed construction:**

>   Holding the bearing members against the underside of the platform so as to permit horizontal movement of the bearing members, but prevent non-horizontal movement.

**Court's construction:**

>   These terms do not contain a limitation that the bearing member cannot move in a non-horizontal direction.

In its claims construction brief, defendant identifies "retaining said stand portions in face-to-face engagement with the underside of said platform and permitting limited displacement of said bearing members in a horizontal direction" (claim 1) and "retaining said bearing means in sliding engagement with the underside of said platform and permitting limited displacement of said bearing members in a horizontal plane" (claim 8) as functions of the "assembly means."

 As discussed above, these are not functions of the "assembly means" but the effect of how the bearing member or stand portion are connected to the platform. Nonetheless, the parties dispute whether these two phrases contain a limitation that disclaims *any* non-horizontal movement between the bearing member and the platform. Because neither the language of claims 1 and 8 nor the specification specifically disclaim non-horizontal movement, I conclude that the non-horizontal limitation should not be read in to these claims terms.

Defendant argues that because both claims 1 and 8 discusses limits on the bearing member's horizontal movement in relation to the platform, these claims specifically disclaim non-horizontal movement. In addition, the specification of the '420 patent also state that there should be "sufficient clearance so that the bearings may move horizontally with respect to the platform." '420 Pat., col 4., lns. 30-39. Despite defendant's contention that these lines constitute an express disavowal of non-horizontal movement, there is no language that expressly denies non-horizontal movement. Also because the invention transfers vertical force through the bearing members, it would appear that a certain amount of vertical movement would occur between the bearing member and the platform. However, it is the patent's total silence on whether the bearings could move in a limited vertical manner that leads me to conclude that neither claim term requires a limitation of "non-horizontal movement." Finally, as plaintiff

11

observes, for the claimed horizontal movement to occur, there has to be *some* vertical movement, however minuscule; the scale would not work at all if it completely disclaimed vertical movement.

**2. "L-Shaped" as used in claims 5 and 6**

**Plaintiff's proposed construction:** "bent from the vertical"

**Defendant's proposed construction:** "bent at a 90° angle"

**Courts's construction**: No construction necessary at this time.

Defendant contends that the term "L-shaped" must be construed to have only a 90° angle because an "L" is always bent at a 90° and because figure 11 in the specification illustrates the "L-shaped" tabs as bent at 90° angles. I disagree. As an initial matter, a description or depiction of a preferred embodiment in the specification does not require importing a limitation unless the patent expressly discloses this limitation. Moreover, defendant cites no language in the claim language or specification that identifies an "L-shape" as having to be 90°. The closest example defendant identifies is a passage in the specification in which the L-shaped tabs are "bent over to secure the base portion of the bearing members 42 against the lower face fo the platform . . ." '420 Pat., col. 4, lns 32-34. Defendant reasons that because the tab must be bent over to secure the bearing it can only be at 90°. However, defendant offers no evidence that corroborates its reasoning and it is not readily apparent that a tab must be at 90° to secure the bearing member to the platform.

At the same time, plaintiff's proposed construction is far too broad and contradicts both the claim language and the dictionary definition of "L-shaped." An "L" is defined as "a shape *like* that of a capital L." *New Oxford American Dictionary*, 943 (2d ed. 2005)(emphasis added). Although this definition borders on syllogistic (i.e., an "L" is something like an "L"), it is helpful in that it shows that the common usage of the term does not require an L-shaped tab to be *exactly* 90°. However, if "L-shape" simply meant "bent from the vertical" it could encompass any angle from 0° to 90°. As with defendant's proposed construction, no language in the claim or the specification suggests this interpretation either. In describing the claimed element the patentee choose the term "L-shape" as a means of limiting the possible angles at which the tab could be bent. Because neither party has offered a construction that clarifies the disputed term, I will not construe the term "L-shaped" at this time.

ORDER

It is ORDERED that

1. The disputed claim terms found in U.S. Patent No. 5,133,420 are construed as follows::

    (A)    "assembly means" as used in claims 1 and 8 means "Platform tabs or projections inserted into slots in the bearing member and bent over to connect the platform and the bearing member.

    (B)    "retaining said stand portions in face-to-face engagement with the underside of said platform and permitting limited displacement of said bearing members in a horizontal direction" as used in claim 1 does not contain a limitation that the bearing member cannot move in a non-horizontal direction;

    (C)    "retaining said bearing means in sliding engagement with the underside of said platform and permitting limited displacement of

>said bearing members in a horizontal plane" as used in claim 8 does not contain a limitation that the bearing member cannot move in a non-horizontal direction; and

(D) "L-shaped" as used in claims 5 and 6 requires no construction.

2. The motion by plaintiff Sunbeam Products, Inc. for permission to file a reply brief regarding claim construction, dkt. 49, is DENIED.

Entered this 29th day of April, 2009.

BY THE COURT:

/s/

STEPHEN L. CROCKER
Magistrate Judge