IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

SUNBEAM PRODUCTS, INC.,

                              Plaintiff,                          OPINION and ORDER

    v.                                                     08-cv-376-slc

HOMEDICS, INC.,

                              Defendant.

---

Plaintiff Sunbeam Products, Inc., owns United States Patent No. 5,133,420 (the '420 patent), which discloses a method of constructing scale platforms. Sunbeam has filed this patent infringement lawsuit against defendant Homedics, Inc., alleging that Homedics's scale models infringe the '420 patent. Now before the court are Sunbeam's motion for summary judgment on infringement and Homedics's motion for summary judgment on its invalidity counterclaim and laches defense. Dkts. 78 and 97.

I conclude that Sunbeam has failed to adduce sufficient proof to allow a reasonable jury to find that Homedics's scales infringe the '420 patent. Therefore, Sunbeam is not entitled to summary judgment on its infringement claims.

To the contrary, given undisputed facts, no reasonable jury could find that every limitation recited in the independent claims of the '420 patent is found in the accused scales, either literally or under the doctrine of equivalents. Although Homedics has not moved for summary judgment on non-infringement, "a district court can enter summary judgment *sua sponte*, or on its own motion, under certain limited circumstances." *Simpson v. Merchants Recovery Bureau*, 171 F.3d 546, 549 (7th Cir. 1999); *Goldstein v. Fidelity & Guar. Ins. Underwriters*, 86 F.3d 749, 750 (7th Cir. 1996). Because the question on which this case turns was directly raised and

extensively discussed by both sides in their briefs and other submissions on Sunbeam's motion, both sides have had notice and a fair opportunity to be heard.

Therefore, entry of summary judgement for Homedics is appropriate even though Homedics did not file its own motion for summary judgement on non-infringement. *Id.*; *see also Computer Docking Station Corp. v. Dell, Inc.*, No. 06-C-32-C, 2007 WL 5117465, *4 (W.D. Wis. Jan. 11, 2007) (citing *Athletic Alternatives, Inc. v. Prince Manufacturing, Inc.*, 73 F.3d 1573, 1578 (Fed. Cir. 1996)) ("Where the parties do not dispute any relevant facts regarding the structure or operation of the accused products but disagree over the possible meanings of a claim, the question of literal infringement collapses to one of claim construction and is amenable to summary judgment").[1]   As a result, it is not necessary to reach Homedics's counterclaim of invalidity or its laches defense.

Also before the court are Sunbeam's motion to file a supplemental response to Homedics's motion for summary judgment, dkt. 157; Homedics's request for an oral hearing on the summary judgment motions, dkt. 97; and the parties' disputes relating to evidence supporting their proposed findings of fact, including:   Sunbeam's motion to strike the expert report and testimony of Sidney Williamson, dkt. 81; Sunbeam's motion to strike the declarations of Andrea and Rudy Armijo, dkt. 125, and motion to file a reply brief in support of that motion, dkt. 181; Sunbeam's motion to strike the deposition and declaration of Sal Robles, dkt. 155, and motion to file a reply brief in support of that motion, dkt. 187; and

---

[1] Given that Homedics raised in its response the arguments that underlie the court's summary judgment ruling in its favor, it is unclear why Homedics did not file its own motion for summary judgment. Perhaps both sides read too much into the court's claim construction order (more on this *infra* at n.2 and 23-24), but it is pointless to speculate.

Homedics's motion to strike the expert reports of Richard Prins, dkt. 170.  Except for the motion to strike Williamson's testimony, all of these motions relate to Homedics's counterclaim and can be denied as moot.  I am denying Sunbeam's motion to strike Williamson's testimony for the reasons stated below.

For the purpose of Sunbeam's motion for summary judgment on infringement, I find that the following facts are undisputed and material:

FACTS

## I.  The Parties and Patent -In-Suit

Plaintiff Sunbeam is a Delaware corporation having a principal place of business in Boca Raton, Florida.  Defendant Homedics is a Michigan corporation having a principal place of business in Commerce Township, Michigan.

The application that resulted in Sunbeam's U.S. Patent No. 5,133,420 was filed on December 11, 1990 and issued on July 28, 1992.  The '420 patent discloses platform scales having a particular type of bearing member, an embodiment of which is illustrated in Figure 10 of the '420 patent:



*Fig. 10*

As illustrated, the bearing member 42 includes a somewhat channel-shaped column portion 42a and a base or stand portion made up of the flanges 42b, 42c and 42d. The oppositely extending flanges 42b and 42c are formed with elongated slots 42e. At the upper end of the bearing 42, the column portion 42a is formed with two spaced projections 42f between which is formed a slot 42g.

The bearing members 42 are mounted on the underside of the platform, as illustrated in Figures 1 and 3 of the '420 patent:



As illustrated in Fig. 3, the bearing member (unlabeled) is mounted to the underside of the platform 14, and extends downwardly therefrom to contact the force collection lever 18c. The force lever is formed with an open, upwardly facing V-shaped notch or bearing recess 44 into which the end of the column 42a, and more particularly, the end of the slot 42g engages the force lever. Thus, as a weight is applied to the platform 14, that downward force is transmitted through the bearing member 42 to the force collecting levers 18c, thereby causing the force lever to rotate downwardly about its outer end which is pivotally supported in the slots 16c formed on the peripheral walls 16b and the base 16.

4

As disclosed in the '420 patent, the bearing members 42 are mounted to the platform 14 by tabs 46 formed integrally from the sheet metal member which forms the platform 14. The tabs are inserted through the slots 42e on the flanges 42b and 42c and are bent over to secure the base portion of the bearing members 42 against the lower face of the platform 14 but with sufficient clearance so that the bearings may move horizontally with respect to the platform 14. This limited freedom of movement is accomplished by making the width and length of the slots 42e sufficiently larger than the thickness and width of the tabs 46 so that such movement may take place.[2]

The purpose of the horizontal movement is to allow the bearing members to adjust and accommodate manufacturing tolerances which are found to cause dimensional differences between the location of the notches or bearing recesses 44 on the force levers. The specification teaches that:

> If the weighing mechanism is to be accurate and produce repeatable, consistent measurements, the force applied through the bearing members 42 must be vertical, causing rotational movement of the force collecting levers but may not include a twisting or lengthwise movement of force on the force levers or additional friction would be introduced to produce inaccuracies and inconsistent weight measurement.

Col. 4, lns. 4-11.

---

[2] As noted in the claims construction order, this horizontal movement would be impossible if the bearing members 42 could not move vertically normal to the platform 14. This is *all* that the court had in mind when it construed the term "assembly means" as not containing a limitation that the bearing member cannot move in a non-horizontal direction. *See* April 29, 2009 Order, dkt. 58, at 11-12. As discussed below, the court's rejection of a vertical movement limitation did not—indeed, could not—endorse any sort of pivotal movement by the bearing member since this would defeat the critical improvement claimed by the '420 patent.

5

With loosely coupled bearings, such as those taught by the '420 patent, the bearings are free to move with respect to the platform during assembly in the factory. Factory workers can lower the platform onto the base and then shift the platform with respect to the base until each bearing settles in its correct place over a lever. This allows the scale to operate properly without binding or moments acting on the levers.[3]

The '420 patent teaches that several attempts were made in the past to simplify the bearing structure, one being the bearing claimed in U.S. Patent No. 4,452,326 (the '326 patent). The '326 patent was assigned to Tricolor Corporation in 1982. It is commonly referred to as the Hanssen (*a/k/a* "Hanson") patent, after its inventors. The background section of the '420 patent instructs that:

> Both of [the] prior art patents [including the '326 patent] teaches the concept of a one-piece bearing member which is loosely connected to the platform so that it may pivot or rock to adjust itself to proper engagement with the bearing portion on the force collection lever. The concept of having the one-piece bearing member pivot about a point on the platform prevents the application of pure vertical force to the force collecting lever and increases the possibility that an undesired binding or force moment will be applied to the force collection lever.

Col. 1, lns. 41-46.

The summary of the invention section of the '420 patent further explains that:

> The present invention provides a simplified, one-piece bearing which represents an improvement in the prior art in that it exerts a pure downward force between the scale platform and the force collection lever which it engages. The bearing member consists of

---

[3] A "moment" or "moment of force" is what most people think of as torque although the terms are not synonymous in the field of mechanical engineering.

6

a base portion with flanges in a single plane and a column portion which extends normal to the plane of these flanges.

Col. 1, Lns. 54-61.

## II.  The Independent Claims of the '420 Patent

Independent claim 1 states:

> A platform scale comprising a base having means for pivotally supporting a plurality of force collecting levers, having two ends each of said levers being pivoted at one end and being connected to force measuring means which responds to pivotal movement of said levers, a platform coextensive with said base and having an underside, said platform extending horizontally to support a load to be weighted, bearing members mounted on the underside of said platform to support said platform with respect to said base with said bearing members engaging said levers intermediate their ends to apply a rotating force to said levers in response to a load on said platform, **said bearing members being loosely coupled to said platform permitting horizontal displacement,** said bearing members each having stand portions and depending column portions each, said depending column portions having a lower end, **assembly means on said stand portions and on said platform retaining said stand portions in face-to-face engagement with the underside of said platform and permitting limited displacement of said bearing members in a horizontal direction**, each said lever being formed with an upwardly facing notch which receives a horizontally extending edge on the lower end of said depending column portion, said assembly means permitting said body members to shift horizontally to align said edges in said notches.

Col. 4, ln. 65 – Col.5, ln. 23 (emphasis added).

Homedics asserts that the accused scales do not meet the "loosely coupled," "horizontal displacement," "face-to-face engagement" and "limited displacement of said bearing members in a horizontal direction" elements of claim 1 (see text in bold).  A person having ordinary skill

7

in the art of the '420 patent would understand the terms "body member" and "bearing member"

to have similar meanings and be interchangeable.

Independent claim 8 states:

> A platform scale comprising a base supporting a plurality of force collecting levers, having two ends said base being substantially horizontal and having a generally upwardly extending wall around a peripheral portion thereof, each of said levers having a downwardly facing bearing notch at one end, each said notch receiving said wall to pivotally support each said lever, said levers being connected to force measuring means which respond to pivotal movement of said levers, a platform coextensive with said base and extending horizontally to support a load to be weighed, said base being substantially rectangular and having one or more corners and an underside, said platform having bearing members mounted near the corners on the underside thereof to support said platform with respect to said base with said bearing members engaging said levers intermediate their ends to apply a rotating force to said levers in response to a load on said platform, assembly means on said bearing members and on said platform retaining said bearing means **in sliding engagement** with the underside of said platform and **permitting limited displacement of said bearing members in a horizontal plane**, said assembly means having spaced projections and slots formed in said bearing members and said platform, said **slots being substantially larger than said projections to allow relative horizontal displacement of said bearing members with respect to said platform**, each said lever being formed with an upwardly facing bearing notch which receives a horizontally extending edge on a lower end of each of said bearing members said assembly means permitting said bearing members to **shift horizontally** with respect to said platform to align said edges and said bearing members with respect to said upwardly facing notches.

Col. 6, lns. 10-44 (emphasis added).

A person having ordinary skill in the art of the '420 patent would understand the terms

"bearing means" and "bearing member" to have similar meanings and be interchangeable.

Similarly, the terms "projections" and "tabs" have similar meanings and would be

8

interchangeable.  Homedics asserts that the accused scales lack the "sliding engagement," "limited displacement of said bearing members in a horizontal plane," "slots being substantially larger than said projections to allow relative horizontal displacement of said bearing members with respect to said platform"  and "shift horizontally" elements of claim 8 (see bolded text).

## III.  The Accused Products

Homedics sells a variety of brands of scales, including the Taylor and Metro lines, which it acquired in August 2002.  In March 2003, Homedics introduced its own line of scales. Homedics (including Taylor) stopped manufacturing products in the U.S. in March 2006, when it outsourced all manufacturing to China.  The accused products include the following:

- Body Basics SC-500
- Homedics SC-120
- Homedics SC-121
- Homedics SC-122
- Homedics SC-123
- Homedics SC-124
- Homedics SC-125
- Homedics SC-505
- Homedics SC-506
- Homedics SC-510
- Homedics SC-550
- Metro 2000
- Metro 2000 EXP
- Metro 2372 EXP
- Taylor 1610
- Taylor 2004W
- Taylor 2020
- Taylor 2372S
- Taylor 4800
- Taylor 4822W
- Taylor 4825
- Taylor 4826
- Taylor 4827
- Taylor 4828 EXP
- Taylor 4828
- Taylor 4829
- Taylor 4830
- Taylor 4832
- Taylor 4832W
- Taylor 5553
- Taylor 5553ES
- Taylor 5554
- Taylor 5559
- Taylor 5563
- Taylor 5564
- Taylor 5571
- Taylor 6050T
- Taylor 6310T
- Taylor 7001
- Taylor 7003
- Taylor 7020
- Taylor 7070
- Taylor 7200

9

In some instances, models differ in color only.  For example, the Homedics SC-120 to SC-125 have the same interior parts but have different plastic tops.  All of the accused products are the same for the purposes of infringement, except with respect to the tabs described in claims 5 and 6.  The bearings in the accused scales are the same except for slight dimensional and configurational differences and function in the same way to a greater or lesser degree, depending on the tab restriction.  The following is a representative example of Homedics's bearing as compared to the '420 patent:



All of the bearings in the accused scales have a vertical part (or column) with a bearing slot (or lever notch), a nose and two wings with wing noses.  The bearings in all of the accused products have a stand portion, which is perpendicular to the vertical part and has slots and edges.  The underside of the platform of the accused scales have circular dimples to engage the pivot nose of each bearing.  The underside of the accused platforms also have tabs by which the bearing is attached loosely to the platform.  (The parties dispute how loosely the bearing is attached.)

The pivot nose of each bearing engages the dimple in the platform, allowing the bearing to rock or pivot about the pivot nose. The wing noses or plate edges on the accused bearings limit the rocking or pivoting rotation when they contact the underside of the platform. As shown below, when the scale is in an unassembled state, the bearing can be lifted away from the platform and moved (the parties dispute what type of movement occurs). After the scale is assembled, the movement of the bearing is restricted to some degree.



OPINION

## I.  Williamson Report and Testimony

Sunbeam moves to exclude all of the expert reports and testimony of Sidney Williamson, Homedics's technical expert, asserting that he did not originate, author or understand several of his opinions.  Williamson has signed three reports on invalidity (April 1, May 6 and June 24, 2009), one bearing comparison report (May 6, 2009) and two reports in support of non-infringement (May 6 and July 9, 2009).

In support of its motion to strike, Sunbeam cites excerpts from Williamson's deposition to show that 1) he could not recall exactly how many reports he had signed, 2) did not know which opinions that he had expressed in each of his reports, 3) could not identify the differences between the various reports, 4) did not know that a legal section was added to his third invalidity report, 5) did not understand the difference between "obviousness" and "anticipation" with respect to invalidity, 6) was generally unfamiliar with the '420 patent, 7) has a personal relationship with the owners of Homedics's predecessor, 8) took no part in collecting scales allegedly exhibiting prior art or determining which of those scales should be relied upon in his supplemental report and 9) in at least one instance, examined photographs of a scale and not the scale itself.  As relief, Sunbeam seeks to prevent Homedics from using any technical expert at trial, preclude Homedics from challenging infringement or the validity of the '420 patent and attorney's fees and costs associated with bringing the motion to strike.

Homedics responds that although Williamson's nervousness, confusion and difficulty answering legal questions may provide grounds to impeach his credibility, they are not grounds to strike him as an expert witness.  Homedics is correct.

12

Williamson's deposition transcript shows that Sunbeam's assertions as to his confusion and lack of knowledge in some areas are correct. However, Williamson was not retained for his expertise on the patent or patent law and he is in no position to offer an opinion about invalidity or infringement. Even if he were, such an opinion would be of no use in any event. *See Dynacore Holdings Corp. v. U.S. Philips Corp.*, 363 F.3d 1263, 1277-78 (Fed. Cir. 2004) (expert's unsupported conclusion on ultimate issue of infringement is insufficient to raise genuine issue of material fact). What matters is an expert's testimony about how the device works or what makes the patented invention obvious or anticipated. Although Williamson made several statements about whether the '420 patent is invalid, obvious or infringed, such statements do not warrant exclusion of his expert reports altogether. Rather, I will disregard his conclusory statements. This principle applies to any expert opinion testimony regarding invalidity, obviousness or infringement. *WNS Holdings, LLC v. United Parcel Service, Inc.*, No. 08-cv-275-bbc, 2009 WL 2136961, at *4 (W.D. Wis. July 14, 2009).

Next, Williamson's general incoherence does not support a finding that his reports were ghost written by defense counsel. *See, e.g., Trigon Insurance Co. v. United States*, 204 F.R.D. 277, 293-95 (E.D. Va. 2001) (Rule 26(a)(2)(B)'s requirement that expert prepare report "implies involvement other than perusing a report . . . 'ghost written' by counsel") (citations omitted). Even though Williamson was painfully confused about the differences between his reports, the meaning of certain legal terms and the details of the '420 patent, he was able to discuss the products that Homedics gave him for examination and state a cogent opinion as to their structure and function. Williamson has extensive experience working in the industry, including personal knowledge of many of the accused products. "Rule 26(a)(2)(B) does not preclude

13

counsel from providing assistance to experts in preparing the reports, and indeed . . . this assistance may be needed." Fed. R. Civ. P. 26(a)(2)(B) advisory committee's note (1993). The report "should be written in a manner that reflects the testimony to be given by the witness and it must be signed by the witness." *Id.* Williamson testified at his deposition and has since averred that he reached all of the opinions stated in his reports and reviewed all of his reports before signing them. In light of this, it would be up to the jury to decide whether and how much to trust Williamson's admissible opinions. *Smith v. Ford Motor Company*, 215 F.3d 713, 719 (7th Cir. 2000) ("[W]hether the expert is credible or whether his or her theories are correct given the circumstances of a particular case is a factual one that is left for the jury to determine after opposing counsel has been provided the opportunity to cross-examine the expert . . ."). This court's gatekeeping role is limited to determining whether expert testimony is pertinent to an issue in the case and whether the methodology underlying that testimony is sound. *Id.*

This segues to Sunbeam's argument that Williamson's testimony is unreliable in part because he relied on defense counsel to procure specific products and information and only viewed photographs of certain scales. However, the fact that defense counsel limited the scope of Williamson's analysis does not render his report inadmissible. *NutraSweet Co. v. X-L Engineering Co.*, 227 F.3d 776, 789 (7th Cir. 2000) (noting expert used data obtained by plaintiff's hydrologists, rather than data he generated himself). This is the type of information that an expert can rely on under F. R. Ev. 703 ("facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by or made known to the expert at or before the hearing"). *Id.*; *Dura Automotive Systems of Indiana, Inc. v. CTS Corp.*, 285 F.3d 609, 613 (7th Cir. 2002) (citing F. R. Ev. 703); *Tuf Racing Products, Inc. v. American Suzuki Motor*

14

*Corp.*, 223 F.3d 585, 591 (7th Cir. 2000) (expert relied on financial information supplied by plaintiff and assumptions given by counsel). Williamson's qualifications would enable him to assess the information provided by others. *NutraSweet*, 227 F.3d at 789-90; *Walker v. Soo Line R. Co.*, 208 F.3d 581, 588-89 (7th Cir. 2000). Similarly, the fact that Williamson viewed photographs of scales does not make his opinions unreliable. An expert is not always required to perceive personally the subject of his analysis. *NutraSweet*, 227 F.3d at 790 (citing F. R. Ev. 703; *Walker*, 208 F.3d at 591 (physician was allowed to render expert opinion even though he did not personally examine the subject)).

In other words, Sunbeam's arguments go to the weight, not the admissibility of Williamson's opinions. *NutraSweet*, 227 F.3d at 789; *Loeffel Steel Products, Inc. v. Delta Brands, Inc.*, 372 F. Supp. 2d 1104, 1119-20 (N.D. Ill. 2005) (citation omitted) ("As a general rule, questions relating to the bases and sources of an expert's opinion affect only the weight to be assigned that opinion rather than its admissibility"). Accordingly, Sunbeam's motion to strike and for sanctions will be denied. To the extent that Sunbeam objects to Homedics's proposed findings of fact on the ground that Williamson's testimony is unreliable, those objections will be denied for purposes of summary judgment.

## II. Infringement

### A. Legal Standard

Sunbeam has moved for summary judgment on the ground that Homedics infringed claims 1-9 of the '420 patent. Summary judgment is appropriate when, after both parties have the opportunity to submit evidence in support of their respective positions and the court has

reviewed such evidence in the light most favorable to the nonmovant, there remains no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *See* F.R. Civ. P. 56(c). A fact is material only if it might affect the outcome of the suit under the governing law. Disputes over unnecessary or irrelevant facts will not preclude summary judgment. A factual issue is genuine only if the evidence is such that a reasonable factfinder, applying the appropriate evidentiary standard of proof, could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 254 (l986). Under Rule 56(e) it is the obligation of the nonmoving party to set forth specific facts showing that there is a genuine issue for trial.

"'Summary judgment on the issue of infringement is proper when no reasonable jury could find that every limitation recited in a properly construed claim either is or is not found in the accused device either literally or under the doctrine of equivalents.'" *U.S. Philips Corp. v. Iwasaki Elec. Co.*, 505 F.3d 1371, 1374-1375 (Fed. Cir. 2007) (quoting *PC Connector Solutions LLC v. SmartDisk Corp.*, 406 F.3d 1359, 1364 (Fed. Cir. 2005)). Patent infringement analysis consists of two steps. First, the patent claims must be interpreted or construed to determine their meaning and scope. Second, the properly construed claims are compared to the process or product accused of infringing. *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 976 (Fed. Cir. 1995). The first step of this analysis, claim construction, is a matter of law reserved to the court. *Id.* at 970-71. To establish infringement, plaintiffs must prove that each claim element is present in the accused product, either literally or by equivalence. *In re Gabapentin Patent Litigation*, 503 F.3d 1254, 1259 (Fed. Cir. 2007); *Dawn Equipment Co. v. Kentucky Farms Inc.*, 140 F.3d 1009, 1015 (Fed. Cir. 1998). "Direct infringement requires a party to perform or use each

16

and every step or element of a claimed method or product." *BMC Resources, Inc. v. Paymentech, L.P.*, 498 F.3d 1373, 1378 (Fed. Cir. 2007). Under the doctrine of equivalents, "a product or process that does not literally infringe upon the express terms of a patent claim may nonetheless be found to infringe if there is 'equivalence' between the elements of the accused product or process and the claimed elements of the patented invention." *Warner-Jenkinson Co. v. Hilton Davis Chemicals Co.*, 520 U.S. 17, 21 (1997).

Sunbeam must prove infringement by a preponderance of the evidence. *Nutrinova Nutrition Specialties and Food Ingredients GmbH v. International Trade Commission*, 224 F.3d 1356, 1359 (Fed. Cir. 2000). Conversely, Homedics can prevail by proving that at least one element of the asserted claim is absent from its devices.

### B. Claim Elements at Issue

At issue with respect to infringement in this case is whether Homedics's accused scales meet various elements of claims 1 through 9 of the '420 patent, including: the movement of the bearings in a horizontal direction and their position with respect to the platform, the shape of the tabs that secure the bearing to the platform and the method by which the tabs attach to the bearing. The main dispute concerns the bearings' movement and positioning, which turns out to be dispositive in this case.

Claims 1 and 8 are the only independent claims in the '420 patent. The remaining claims depend on either claim 1 or 8 and cannot be infringed unless the independent clause on which they depend has been infringed. *Minnesota Mining & Mfg. Co. v. Chemque, Inc.*, 303 F.3d 1294, 1300 (Fed. Cir. 2002). Independent claims 1 and 8 require that an "assembly means"

17

permit limited displacement of the bearings in a horizontal direction (claim 1) or plane (claim 8) and retain the bearings in face-to-face (claim 1) or sliding (claim 8) engagement with the underside of the platform. In an earlier order, I construed "assembly means" as "platform tabs or projections inserted into slots in the bearing member and bent over to connect the platform and the bearing member." Dkt. 58 at 6.

Homedics's primary argument is that the bearings in the accused scales do not infringe the independent claims because the nose of the bearing rocks and pivots in the dimple on the underside of the platform. According to Homedics, the nose and dimple in the accused bearings prevent the bearing from sliding and only rock or pivot to ensure proper engagement with the levers. Homedics further asserts that a bearing that rocks and pivots does not remain face-to-face to or in sliding engagement with the platform. Sunbeam argues that even if the bearings rock and pivot to some degree, they also move in a horizontal direction and "are necessarily retained in face-to-face engagement with the underside of the platform" because the plates on the base of the bearing prevent "*undue* rotation or vertical displacement." Dkt. 99 at 18, emphasis added.

Contrary to Sunbeam's assertions, the parties dispute many aspects of how the bearings in the accused scales move. However, they agree on a decisive point: the accused bearings rock and pivot to some degree. I note that although Sunbeam objects to nearly every finding of fact proposed by Homedics about the rocking and pivoting motion of the accused bearings, it bases these objections on its claim that Williamson's reports are inadmissible. But I have found that Williamson's reports *are* admissible. More critically in a situation where I am granting summary judgment to a nonmoving party, throughout Sunbeam's proposed findings of fact and

supporting and reply briefs, Sunbeam refers to the "sliding and rotation of the nose of the bearing inside the dimple" in describing how the accused scales permit limited horizontal displacement. *See, e.g.*, PFF 100 and 118, dkt. 171; dkt. 99 at 1-2, 18-22; dkt. 163 at 10, 17-18 and 21.

Regardless whether the bearings on Homedics's accused scales move in a horizontal direction, the question becomes whether the assembly means in the accused scales retain the bearings in "face-to-face" or "sliding" engagement with the platform given the fact that some rocking and pivoting occurs. The terms "face-to-face engagement" and "sliding engagement" are not defined in either the claim language or the specification. Although the parties have not asked for construction of the terms face-to-face and sliding engagement, it is clear that they disagree about the meaning of these terms. Because resolution of the parties' infringement dispute requires determining what the '420 patent means by "face-to-face" and "sliding" engagement, I will construe these terms.


### C. Construction of Claim Terms

When construing disputed terms in a claim, a court should generally give the terms their ordinary and customary meaning. *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996). The ordinary and customary meaning of terms "is the meaning that the term would have to a person of ordinary skill in the art in question at the time of the invention." *Phillips v. AWH Corporation*, 415 F. 3d 1303, 1313 (Fed. Cir. 2005). The Court of Appeals for the Federal Circuit has held that the person of ordinary skill in the art would read a term both in the context of the claim in which it appears and "in the context of the entire patent, including the

specification." *Id.* (citing *Multiform Desiccants, Inc. v. Medzam, Ltd.*, 133 F.3d 1473, 1477 (Fed. Cir. 1998)). Additionally, a patent's prosecution history can be relevant to construing disputed terms of a patent because it "provides evidence of how the PTO and the inventor understood the patent." *Phillips*, 415 F.3d at 1317.

The terms "face-to-face" and "sliding" engagement are not defined in either the claim language or the specification. Commonly, when "face-to-face" is used with respect to two objects, it refers to one facing toward or directly opposite the other. "Sliding engagement" implies that the objects must be aligned in close proximity and be able to slide together. The stated purpose and the specification of the '420 patent are particularly instructive with respect to the meaning of these terms. The background section of the '420 patent explains that the prior art had "a one-piece bearing member loosely connected to the platform so that it may pivot or rock to adjust itself to proper engagement" with the force collection lever. Col. 1, lns. 42-46. The background section then states the problem with the prior are that the '420 patent overcomes:

> The concept of having the one-piece bearing member pivot about a point on the platform prevents the application of pure vertical force to the force collecting lever and increases the possibility that an undesired binding or force moment will be applied to the force collection lever.

Col. 1, lns. 46-51.

In other words, a bearing member that can pivot or rock is undesirable because it could lead to binding or torque on the force collection lever, which would decrease the accuracy of the scale. What is needed is a bearing member that does not pivot or rock. That's what the '420 patent claims to provide, improving on the prior art by exerting "a *pure downward* force between the scale

20

platform and the force collection lever." col. 1, lns. 56-57.  The object of the '420 patent is to

provide:

> a simplified one-piece bearing for applying the force from a scale
> platform to the force collecting levers whereby the forces are
> applied vertically *with no binding or twisting* between the force
> collection levers and their mounting means

> and

> an improved domestic scale having . . . four floating bearing
> supports which are movable to align themselves with the points of
> engagement between the bearing supports and the force collection
> levers *to apply only vertical forces* to the levers.

'420 patent, col 2, lns. 6-17 (emphasis added).

Finally, the specification teaches that for the weighing mechanism in the scales to be

accurate, the force applied through the bearings "must be vertical" and "may not include a

twisting or lengthwise moment of force on the force levers," otherwise "additional friction would

be introduced to produce inaccuracies and inconsistent weight measurement." *Id.* at col. 4, lns.

5-11.

In light of these purposes to reduce friction between the bearing and the force collection

levers and to allow the bearing to move horizontally with respect to the platform, the terms

"face-to-face engagement" and "sliding engagement" must be construed narrowly in order to

ensure that the scale performs as intended:  the base of the bearing must be oriented parallel to

the platform and remain parallel to the platform at all times.  In other words, the bearing and

the platform must remain in the same plane with respect to one another.  More specifically, the

base or stand portion of each bearing (42b, 42c & 42d on Fig. 10, reproduced above at 10) must

remain parallel to the platform so that the bearing slot (42g) on the column of the bearing (42a),

21

which is normal to the base, *see* '420 patent, col. 1, lns. 58-61, applies purely vertical force from the bearing to the force collecting levers. If the platform and the base of the bearing were to leave parallel alignment, the force applied to the levers would not be purely vertical, the bearing and the platform would not slide smoothly and friction would result. Therefore, I will construe the terms "face-to-face engagement" and "sliding engagement" to mean "parallel."

### D. Infringement Analysis

No reasonable juror could find that the base of a bearing that can rock and pivot remains parallel to the platform. Even a bearing that only slightly rocks or pivots would not remain constantly parallel to or in the same plane as the platform and would create a twisting moment of force. Because it is undisputed that the bearings in the accused scales rock and pivot, however slightly, the accused scales do not directly infringe the '420 patent.

However, Sunbeam also asserts that under the doctrine of equivalents, the plates on the accused bearings perform substantially the same function as the patented invention: they prevent "undue" rotation and vertical displacement and maintain the column portion of the bearing approximately parallel to the platform. Homedics counters that the accused bearings are never parallel to the platform and that the '420 patent disavowed the rocking and pivoting motion of the bearings in favor of a bearing that displaces horizontally.

Under the doctrine of equivalence, a broad, overall equivalence between the patented invention and the accused product or process is not enough. Rather, "the doctrine of equivalents must be applied to individual elements of the claim, not to the invention as a whole." *Warner-Jenkinson*, 520 U.S. at 29; *see also Freedman Seating Co. v. American Seating Co.*, 420 F.3d 1350,

22

1358 (Fed. Cir. 2005). At times, the test for equivalence is stated as whether the differences between the elements of the invention and the accused product are "insubstantial," *e.g., Freedman Seating*, 420 F.3d at 1358, and at other times as whether the accused device "performs substantially the same function in substantially the same way to obtain the same result," *Graver Tank & Manufacturing Co. v. Linde Air Products Co.*, 339 U.S. 605, 608 (1950). The doctrine evolved to protect a patentee from "the unscrupulous copyist [who could] make unimportant and insubstantial changes and substitutions in the patent which, though adding nothing, would be enough to take the copied matter outside the claim." *Graver Tank*, 339 U.S. at 607. This added protection, however, is not without cost, for the doctrine of equivalents "necessarily adds uncertainty to the scope of patent claims, and thereby detracts from the public-notice function of patent claims and risks deterring non-infringing and potentially innovative endeavors." *Freedman Seating*, 420 F.3d at 1358 (citing *Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.*, 535 U.S. 722, 727 (2002)). In this case, the parties dispute whether the fact that a bearing rocks and pivots is of any consequence to the face-to-face and sliding engagement elements of the patented scale.

Sunbeam argues that because I declined Homedics's invitation to include a limitation that the bearing member cannot move in a non-horizontal direction, *see* dkt. 58 at 10, the rocking and pivoting is of no import. However, Sunbeam reads too much into that statement. Although "the fact that the bearing could move in a non-horizontal manner does not preclude it from being in face-to-face or sliding engagement," dkt. 75 at 5, I did not find that a bearing that rocks and pivots *is* in face-to-face engagement with the platform to which it is attached. I discussed how it is possible that "if object A and B were parallel to each other in space, such that

object A was above object B, and object B moved in a *vertical* direction, then they would still be in face-to-face engagement." *Id.* (emphasis added).  I also noted that this would remain true if object B moved in a *diagonal* direction.  However, what is constant in these two examples is the fact that the objects remain parallel.  If object B rocked and pivoted, it would no longer be parallel or face-to-face.

In this phase of the analysis, the question remains whether it matters if the accused bearings rock and pivot to some degree.  Said another way, if the base of the accused bearing is approximately or almost parallel to the scale platform, does it meet the face-to-face and sliding engagement elements of the '420 patent?  Sunbeam argues that because the plates on the base of the accused bearings prevent "undue" rocking, the claim elements are met.

The Court of Appeals for the Federal Circuit has erected a number of legal hurdles that a patentee must clear before it may attempt to prove infringement by equivalence.  As Homedics notes, relevant to this case is the vitiation doctrine, which provides that "an element of an accused product or process is not, as a matter of law, equivalent to a limitation of the claimed invention if such a finding would entirely vitiate the limitation." *Freedman Seating*, 420 F.3d at 1358 (quoting *Warner-Jenkinson*, 520 U.S. at 29).   In determining whether a finding of equivalence would vitiate a claim limitation, "courts must consider the totality of the circumstances of each case and determine whether the alleged equivalent can be fairly characterized as an insubstantial change from the claimed subject matter without rendering the pertinent limitation meaningless." *Id.*  Relevant factors are "the simplicity of the structure, the specificity and narrowness of the claim . . . the foreseeability of variations at the time of filing the claim with the PTO" and whether the difference between the claimed element and the

24

corresponding characteristic in the accused device "is a subtle difference in degree" as opposed to a "clear, substantial difference or difference in kind." *Id*. at 1360-61. The narrower the invention's claims, the less likely infringement by equivalence will be found. *Bicon, Inc. v. Straumann Co.*, 441 F.3d 945, 955 (Fed. Cir. 2006); *Sage Products, Inc. v. Devon Industries, Inc.*, 126 F.3d 1420, 1424 (Fed. Cir. 1997). Two cases decided by the Court of Appeals for the Federal Circuit illustrate these points.

*Freedman Seating* involved a claim limitation similar to the one at issue in this case. The patentee in *Freedman Seating* contended that the support member and moveable end of the defendant's stowable seat, which moved only rotationally and did not slide or otherwise move along the seatbase, was equivalent to the claim limitation requiring that the moveable end of the support member be "slidably mounted to said seatbase." The court disagreed, characterizing the structural difference in the mounting of the seatbase as a clear, substantial difference that would have the effect of entirely vitiating the "slidably mounted" limitations. *Id.* at 1361. The court was unmoved by the patentee's contention that the slider crank (a particular type of "four bar mechanism") claimed in the patent and the "fourth link" four bar mechanism used in defendant's device functioned in the same way to produce the identical results:

> [T]aken to its logical conclusion, Freedman's argument would mean that any support member capable of allowing translational and rotational motion would be equivalent to a support member "slidably mounted to said seatbase," which reads "slidably mounted" completely out of the claims. This is the precise type of overextension of the doctrine of equivalents that the claim vitiation doctrine is intended to prevent.

*Id.* at 1361.

The court also noted that the subject matter claimed by the patent "involves relatively simple and well-known technologies" and that the patentees were aware of other types of four bar mechanisms yet decided to limit the claims to slider-crank mechanisms. *Id.* at 1362.

The invention at issue in *Sage Products*, 126 F.3d at 1422, was a disposal container that allowed a user to deposit hazardous medical waste without touching waste already in the container. The patent disclosed a disposal container with an "elongated slot" at its top and a barrier, having a first constriction "extending over said slot" and a second constriction extending beneath the slot. The accused product did not literally infringe the patent because, although it arguably contained an "elongated slot," the slot was within the container body, not at the top. *Id.* at 1423. The court rejected the patentee's theories of infringement by equivalents because all of them "place[d] the location of the 'elongated slot' in this accused device far enough within the container body that, as a matter of law, no reasonable juror could find that it is located at substantially the 'top of the container.'" *Id.* at 1424. Because a finding of equivalence would have permitted the forbidden result of removing the "top of the container" and "over said slot" limitations from the claim, it was irrelevant that the claimed and accused arrangements operated in substantially the same way to achieve the same result:

> [T]he '728 patent claims a precise arrangement of structural elements that cooperate in a particular way to achieve a certain result. Devon achieves a similar result--restricted entry to a medical disposal container--but it does so by a different arrangement of elements. Because this issued patent contains clear structural limitations, the public has a right to rely on those limits in conducting its business activities. This court will not effectively remove such a limitation under a doctrine designed to prevent "fraud on a patent."

*Id.* at 1425-1426.

26

In this case, the background section and specification of the '420 patent could not be clearer: the purpose of the patent is to eliminate any twisting or rotation of the force collection levers and to ensure that the bearing exerts only a vertical or downward force on the levers. As a matter of law, no reasonable juror could find that a bearing that rocks and pivots remains parallel to the platform. If the bearing is allowed to leave parallel, as Sunbeam suggests, the force applied to the collection levers would not be purely downward or vertical, resulting in added friction and, presumably, inaccurate measurements. This is exactly what the '420 patent was meant to prevent.

If Sunbeam is allowed to argue that minimal rocking and pivoting is inconsequential, then the claims' requirements of "face-to-face engagement" and "sliding engagement" would become nothing more than "functional abstracts, devoid of meaningful structural limitations on which the public could rely." *Sage Products,* 126 F.3d at 1424 (citing *Conopco, Inc. v. May Dept. Stores Co.,* 46 F.3d 1556, 1562 (Fed. Cir. 1994)); *see also Tronzo v. Biomet,* Inc., 156 F.3d 1154, 1160 (Fed. Cir. 1998) (holding that finding all shapes to be equivalent structure would entirely vitiate limitation requiring a "generally conical shape"). A finding of equivalence in this case would permit the forbidden result of allowing the bearing to exert a rotational or twisting force on the levers. Therefore, Homedics is entitled to summary judgment on non-infringement.

## III.  Remaining Motions

Homedics has moved for summary judgment on the grounds that 1) the '420 patent is invalid because Homedics's predecessor sold the accused products prior to Sunbeam's alleged invention; and 2) Sunbeam knew about the accused scales for over 10 years but delayed bringing

27

suit (laches defense). The Court of Appeals for the Federal Circuit has held that a district court has the discretion to dismiss invalidity counterclaims upon a grant of summary judgment of non-infringement. *Phonometrics, Inc. v. Northern Telecom Inc.*, 133 F.3d 1459, 1468 (Fed. Cir. 1998); *Cardinal Chemical Co. v. Morton Int'l, Inc.*, 508 U.S. 83, 95 (1993) (in addressing motion for declaratory judgment district court has discretion to decide whether to exercise jurisdiction even when established). It is appropriate for a district court to address only the infringement issue when non-infringement is clear and invalidity is not plainly evident. *Id.* (citing *Leesona Corp. v. United States*, 530 F.2d 896, 906 n. 9 (Ct. Cl. 1976)).

Discretionary dismissal of Homedics's invalidity counterclaim is appropriate in this case because it is clear that the bearings in Homedics's scales do not infringe the '420 patent and it is not plainly evident whether the patent is invalid. A finding of invalidity would require combining several pieces of prior art and analyzing disputed facts surrounding bearings in scales dating back to the 1980's. It would be an unnecessary expenditure of judicial and party resources to explore these issues at this time when Homedics has not given the court any reason to believe that it is at risk of a future infringement suit concerning the '420 patent.

Because I am granting summary judgment for Homedics on the core issue of non-infringement on clear grounds and because Homedics's counterclaim for invalidity is less certain, I am exercising my discretion and dismissing without prejudice Homedics's invalidity counterclaim. Accordingly, Homedics's affirmative defense of laches and the parties' motions on procedural and evidentiary matters related solely to invalidity are denied as moot.

28

ORDER

It is ORDERED that:

(1)  Plaintiff Sunbeam Products, Inc.'s motion to strike the export report and testimony of Sidney Williamson, dkt. 81, is DENIED;

(2) Sunbeam's motion for summary judgment on infringement, dkt. 97, is DENIED and summary judgment is awarded to defendant Homedics, Inc. on that claim;

(3) The following motions are DENIED as unnecessary:

(a)  Homedics's motion for summary judgment on invalidity and laches and request for an oral hearing on the summary judgment motions, dkt. 78;

(b)  Sunbeam's motion to file a supplemental response to Homedics's motion for summary judgment, dkt. 157;

(c)  Sunbeam's motion to strike the declarations of Andrea and Rudy Armijo, dkt. 125, and motion to file a reply brief in support of that motion, dkt. 181;

(d)  Sunbeam's motion to strike the deposition and declaration of Sal Robles, dkt. 155, and motion to file a reply brief in support of that motion, dkt. 187; and

(e)  Homedics's motion to strike the expert reports of Richard Prins, dkt. 170.

(4)  Homedics's counterclaim asserting invalidity is DISMISSED without prejudice; and

(5)  The clerk of court is directed to enter judgment in favor of Homedics with respect to Sunbeam's claims for infringement of claims 1-9 of United States Patent No. 5,133,420 and to dismiss the remaining claims and counterclaims without prejudice and close this case.

Entered this 14th day of October, 2009.

BY THE COURT:

/s/

STEPHEN L. CROCKER
Magistrate Judge

29